Good morning, ladies and gentlemen. We have three cases on the calendar this morning, all patent cases. One from the PTO, two from district courts. First one is Google v. At Home Builders Liquidating Trust, 2016-27-27 and 27-29. Mr. Joseph. Good morning, and may it please the court. CGI requests naturally were not cached. That's the inventor's testimony in his own words, supported by a wealth of other evidence, all of which is dispositive under the correct legal standard. The very simple point is that Engels disclosed a standard CGI request, and such requests were not blocked. Now, the other way of looking at it is that there are certainly... Mr. Joseph, have you challenged Dr. Amarath's qualifications or conclusions anywhere in the record? Conclusions, certainly. We don't dispute that the experts are qualified, but yet, you're right, they said in their brief that we don't dispute his conclusions. His conclusions include non-obviousness. So we certainly dispute his... Google certainly disputes his conclusions throughout the case. We have to defer to the board on fact-finding, what a reference discloses. The board said the actual disclosure of Engels is inconclusive. And it also said the essential problem with Engels is its lack of disclosure. It's a major hurdle. Well, it is, except for there are three points. The first is that, as a matter of law, a reference doesn't have to explicitly, in an ipsumus verbis kind of way, exactly disclose the precise syntax the board wanted. Instead, the question is how a person of ordinary skill in the art would construe it. So it's not just what's exactly in Engels, but it's also what the person of ordinary skill brings to it. And Engels discloses, in a number of respects, shows that it's a standard request for a CGI script. I'd like to cover that in a moment. But then the key point there is that a person of skill in the art, what do they know? They know that, as a standard matter, by default, a request for a CGI script will not be blockable. And in terms of that, the first one is- What about Dr. Almiroth's testimony, where he said that normally you have to have some sort of heuristic, such as CGI DIN or a question mark, to make it non-blockable? Right, well, he- Or blockable, yeah. Right. Go ahead. I understand. It's like the double negative that tends to creep in here. In terms of Almiroth's testimony, the thing is, he's conclusory on the key issue. Because he does primarily argue that Engels doesn't disclose both CGI DIN and question mark. But then the other thing he points to is a 1996 textbook, which he says shows that requests are not always unblockable, or sometimes blockable. But then on the key question of, okay, when are they blockable? When are they not blockable? There's no support there. It ends up on that crucial question just being conclusory expert testimony. And so that's number one. Number two, though, is even if- Well, number two would be- The other way of looking at it is there's only two possibilities. Either the CGI request is blockable or it's unblockable. That means we have a genus of two, both of which were well-known and readily understood to those in the art. So as a matter of this court's case law, therefore, disclosure of the genus of CGI requests should disclose both of those two known species. That's basically chemical case law. Petering. Yeah, certainly. And like Eli Lilly, for example, it certainly came up on that side of things. But there's no reason that the same principle of law would not also apply here. And here, you know, the cases you look at, like NREG-LEAVE, is an anticipation case for that proposition. And most recently, the CRFD research. And also KSR is a matter of obviousness law. And then the third point is that even if CGI bin plus question mark were required, okay? The board acted arbitrarily and capriciously because it found- This was highly disputed by the parties. It found, as a matter of fact, that Engel's request was a get request. But it then failed to analyze the significance of that point to the parties it so highly disputed. And the reason that's important is that a person- I don't think there's even any dispute. A person of skill in the art would know that the get request by Engel's would use a question mark. The reason is that get requests, what they do is, as part of their syntax, they use a question mark followed by a query string in order to pass information. And the board found as a fact that Engel's past parameters passed information to the CGI script. And that included the board recognized that it passed a content provider member identification. And Figure 4 of Engel shows it also passes a user identification. Now, what does that mean? The whole point of Engel's is to provide a custom advertisement. You have a bunch of websites, a bunch of users, and an advertising computer that provides a custom advertisement to the user when any user views any of those websites. You're relying on Mr. Kent's testimony. In part, yes. How is Mr. Kent an expert who meets the PTAS criteria? He had more than two decades of experience in programming web browsers and other things. I mean, the dispute there was- I mean, again, the board found this as a fact. I mean, what it says is he hacked around in it, or however you want to use those phrases these days. Well, there's- well, yeah, it depends on what you mean by hacked, obviously. But the point is that- The old sense. I mean, he wrote some colorful books that they make fun of. But he also had spent, as the board correctly found, more than two decades programming web browsers, which is the- or excuse me, web pages, I think, which is the key point. And that relevant experience made him qualified. But even apart from his testimony, right? Even apart from his testimony, what's the testimony, getting over to this point, that a person skilled in the art would know that CGI scripts are generally not blockable by cache? Even apart from him. First, there's the inventor, Michael Griffiths, who testified explicitly that CGI requests naturally were not cached. The prosecution history explains that that's the default. Because, as you know, the patent refers to CGI bin as one way of making a request non-blockable. The prosecution history explains that CGI bin strings, this is appendix page 6908, quote, would, quote, be not blocked by normal HTTP standard compliant terminals or proxy servers. And in the WebNet 96 document, appendix page 1154, further confirms that. So all of the evidence that talks about what is the standard, what is the default, all says the same thing, which is the standard is not blockable. What about the 1995 W3C publication? Doesn't that suggest otherwise? It suggests that there's different ways to make it blockable, and it suggests the use of the string CGI bin and question mark, right? Well, the 95 document is the one that talks about remapping the directories, but says zero about whether that would affect blockability or unblockability. In other words, you can remap the directories, you can change the names of some things. And the document certainly stands for that proposition, but there's no evidence in the record in that document or anywhere else that that affects blockability. The only evidence that they, so against all of our evidence as to what the standard default is, the only thing they have on their side is the 96 textbook, and they're experts in reliance on the 96 textbook. The thing about the 96 textbook is there are two points on it. First, it discloses a particular CGI script and says that that would be blockable. Now, it certainly stands for the proposition, therefore, that sometimes they're blockable, sometimes they're not. Everyone agrees with that. But it doesn't say what the default is, and it doesn't say, and it especially doesn't address at all what in particular is required. Now, is there a district court action that has stayed? It has not stayed. It's pending. It's pending. Because there are other claims. So if you don't succeed, and these patents are expired, right? I believe that's right. So if you don't succeed in this appeal, then the district court action proceeds on infringement? Yes. Right. Yeah, there's a pending district court action because there are other claims not implicated here. So that goes forward anyhow. But so this is the evidence of what the standard would be, which is, therefore, how a person is killing the art would understand it. It also bears emphasis that we know ANGLES discloses the standard because, first, it discloses the advertisement request referencing a CGI script with no indication otherwise. That explicitly indicates on appendix page 1071-72 that it uses a standard web server software system, number one in 1071. And then also on 1070, it says it uses a standard web browser like Microsoft Explorer or Netscape Navigator, which is why the board found as a fact on appendix page 25, it's a standard web browser. So a CGI request from a standard web browser to a standard web server, there's no reason a person skilled in the art would think it's anything other than the standard. Also, the whole context of ANGLES makes that necessary because the point of ANGLES is to provide custom advertising. That's right in its title, custom advertising. And the only way the advertised computer can return custom advertising is if the request is not blocked. If the request to the advertising computer for custom advertisement gets blocked by cache, then the cache just returns the same advertisement every time. What about secondary considerations? Objective and issue are important, I'd say, in this case, for two reasons. The PTAP felt there was evidence of a long-felt need and then said, even though it may be weak on its longevity, but, I mean, we're dealing with a rolling target. I mean, this is computer stuff. Fifteen months can be a real long time. If we took fifteen months to get out this opinion, you'd think it was a long time, wouldn't you? Well, context matters. Yes, but the point here is, first, the court correctly found it was weak. Excuse me, the PTAP correctly found it was weak. And so it's just a matter of arbitrary and capricious for the board to say, evidence is weak, evidence is weak, evidence is weak, we find it persuasive. There's just a massive gap in logic there, going from weak to persuasive without even trying to explain how you get from weak to persuasive. And as a matter of reasoned decision-making requirements, the board has to not only find the facts and state the conclusion, but give the reasoning in between. And that's especially important when there's such a jarring disjoint there. But even as to long-felt need, though, the important thing is computers, under cases like N-ray Fresenius, surely cut the other way of Fresenius. Because, yes, it's a fast-moving area. But what that means is that as new problems present themselves, existing methodologies, skill in the art, may well promptly suggest solutions as well. In other words, the nature of the new problem may well suggest its solution. So when it's fast-moving, that's all the more reason to wonder whether it's really inventive genius or innovation, or just an application of known techniques to a new situation. Which is why, if there's ever an area where you're going to say that long-felt should mean something other than long, we would say it would not be this one for that reason, under the reasoning of Safer-Zenius, and there's also some similar language in KSR. But the second reason objective and disjoint are important, apart from the obvious arbitrary and capricious problem with the gap in the reasoning, is that this court has recognized they can be the most important and persuasive evidence. And under the board's underlying findings, the only thing that is shown strongly, as opposed to in the board's own words, weakly, is contemporaneous invention by others. And this is part of going back to your point about it's moving fast, that other people were developing similar solutions at about the same time, to the point where the evidence of industry standard that they rely on, the IAB guidelines, gives, in its own words, six different alternatives, and the board found as a fact that the claimed invention is only one of them. So what we see here is the one thing that is not weak, that is strong even under the board's findings, is that others are inventing about the same thing at the same time, suggesting that it is just the application of ordinary skill, using known techniques to address a new problem. Yeah, I'm sort of thinking out loud, but the hardware flaw, Intel hardware flaw that Google revealed caused a huge scramble to resolve it. But I guess you'd be hard-pressed to say 15 days or 30 days was long-felt need, even though it's vitally important. Yeah, it's still not long-felt. Any problem can take a while to work through. And so if 15 months is not long-felt in other contexts, it's not. And for long-felt, this court, it was six years in TI, two decades in Rambis. That is, it's hard to see how if long-felt's not... But in any event, the board said it was weak, which is our only... Maybe, said maybe weak. Well, maybe weak. Yes, but the point was, it didn't say it was more than weak, right? There's no finding that's more than weak, and that's the key point for us to rely on. And then I should say what's left for rebuttal. If this court were to agree that there's substantial evidence to support the board's finding that Engel doesn't teach or suggest that its CGI script is non-blockable, do we even get to the secondary considerations? Well, this court has held that a court, or in this case the board, must always consider objective indicia because objective indicia can be... But if the prior doesn't teach certain elements in the claim, and the question is whether the board erred in finding that the claims aren't obvious, then why would we review the secondary considerations? Well, our point there is that objective indicia is not just a one-way ratchet. So it's true that the case is saying that secondary considerations must always be considered are cases where the primary case went in favor of one direction. But it's not a one-way ratchet, and if the evidence of objective indicia strongly suggests lack of invention, then that also ought to be considered as part of the overall obvious legal balancing of the relevant factors under this court's recent cases. Let's hear from the other side, and we'll give you your three minutes back. Well, thank you.  Good morning, Your Honor. May it please the Court? Mr. Stevens, Google says on page 31 of its blue brief that standard CGI bin strings are typically unblockable. Do you agree with that? Absolutely not, Your Honor. That's where I want you to start. The question, of course, for this court is whether or not the PTAB's decision that that's not the case is supported by substantial evidence. And I submit that it is. There are a number of pieces of substantial evidence which the Board expressly relied on, one of which was Dr. Almiroth's declaration. And, of course, Dr. Almiroth's declaration carefully— Do you think Mr. Kent is an expert? No. We, of course, dispute whether or not Mr. Kent meets the requirements for a person of ordinary skill in the art. The Board found that they didn't— that it was close enough that they weren't going to just discount all of his testimony. But it's clear that, in the end, they discounted his testimony in favor of Dr. Almiroth on many key questions. The substantial evidence, in addition to Dr. Almiroth's expert report, of course, are the CGI textbook and the W3C publication, both of which show that ordinary CGI requests are not catchable. The CGI textbook shows that because it gives an example and explains that if you use it, it will be cached. And the W3C publication shows it because it shows that you don't have to use CGI bin and a question mark in the request itself. So, I submit that that substantial evidence supports the finding that Angles does not disclose an unblockable request. What about the idea that Angles discloses a genus of two, which essentially is a disclosure of both? Yes. Good question, Your Honor. And I would analogize it to a disclosure of, say, a structural element. So, a structural element could be made of metal. Metal could be magnetic, meaning that you could magnetize it. Well, that means structural elements are either magnetized or not. Does that mean it would be obvious to magnetize a structural element? It doesn't. And here, we have a situation where the board found correctly, and Dr. Kent, or excuse me, Mr. Kent, also testified that the CGI bin request cacheability depends on its syntax. And there's a wide variety of syntax that can be used. Only a small subset of that would be uncacheable. So, when you're looking at a reference like Angles, which is completely silent on the question of cacheability, and you're looking at a technology in which only a small subset of the available syntaxes are cacheable, or excuse me, are blockable, unblockable requests, the board found correctly that a person of ordinary skill wouldn't assume that the mere mention of a CGI script is enough to disclose an unblockable request. And Judge Stoll, I'd like to address your question about whether or not this court need reach the objective indicia, because I think if you find that substantial evidence supports the board's conclusion that there is no disclosure of an unblockable request in Angles, that's the end of it. There's no need to address. In other words, you don't have a reference. Right, exactly. There's no combination that shows all the elements, and therefore no need to reach the objective indicia. In spite of that, I think this board can affirm the objective indicia findings. They are supported by substantial evidence. Unlike what Google says, it's not the case that there was a finding that the objective indicia are weak in their entirety, and clearly there was a finding, and the evidence shows that the need was actually fairly acute, and existed for at least 15 months. So the Wall Street Journal and New York Times articles show that this was a need that people knew about and cared about, and it was affecting the industry. This was a fast-moving industry. I'm not sure that it, I mean, they say it may be weak. I used that phrase to your opposing counsel as well. I'm not sure it is weak. I agree with that, Your Honor. For one thing, I think you're looking at multiple independent indicia here, and a number of pieces of evidence can add up to be strong even if individually they're not as strong, and I think that's the situation here. You've got a number of separate pieces of indicia that each one shows that there was a long-felt need or some industry praise or adoption, and together they add up to something fairly strong. In particular, there's an argument that somehow this was attributable to MatchLogic's PR. Well, MatchLogic was a small company at the time, and lots of small companies release press releases. They're usually not reported in the New York Times and the Wall Street Journal. Well, Your Honors, unless you have other questions, I'll leave it at that. All right. Thank you very much. Steven, Mr. Josepher. Just two points. One is in terms of, Judge Lawyer, your question again about the genus of two. At a minimum, it ought to be obvious to pick the one of the two that would work. And again, with ANGLES, the idea is to provide a custom advertisement, which means when you know they're, at a minimum, you know they're blockable requests, unblockable requests. In ANGLES, it's the unblockable request from the user's computer to the advertising computer that would then enable the advertising computer to run its program and return a custom advertisement, which is the whole point of ANGLES. And then the second thing is, in terms of the get request is important as an additional ground, because after the board found as a fact that ANGLES had a get request, it was then, at a minimum, arbitrary and capricious not to go on to consider that, especially since the evidence shows that if ANGLES has a standard get request, it's going to have a question mark and it's going to have CGBIN in it. We know that first because the whole point of a get request, and I think this is undisputed in the record, is that a get request uses a question mark, the key syntax, followed by a query string to pass information. And the board found as a fact that ANGLES was passing parameters to the advertisement computer so that it could then generate a custom advertisement. So if it's a get request, under the record, there's a question mark there. And the evidence for that is, for example, the CGI programming of the web document 2196-97, and then also the W3C script support document itself, appendix page 1567, and the HTTP protocol document at appendix 860. The get request is really important there. And then you also know that that get request is going to have CGIBIN in it as a standard matter, because the evidence is that the CGI script is a default matter. It's stored in the CGIBIN directory, not surprisingly. The argument you made about how there's two options and you would want to use the one that is correct and that would work with the references purpose, was that an argument that was made before the PTAB? Maybe not that specifically, but obviously a little against preserved issues, not supporting arguments. And certainly argued before the PTAB all along that the board found as a fact, for example, that Angles passes parameters to the advertisement computer in order to get a custom response. And then, obviously, what does that mean? That means it's got to be non-blockable. Because if the request gets blocked, if the request to the advertisement computer gets blocked by cache, then cache returns the same advertisement every single time. You're not going to get your custom advertisement. And so with the board finding as a fact that it's a get request, it's got a question mark in it, and that it's passing parameters, you know for certain there's a question mark and you know for certain it's got to get through. Because otherwise Angles just isn't going to work. And again though, with a genus of two, it seems very reasonable to say that both were disclosed. And certainly as an obviousness matter, it's not a stretch at all to say that the one that would actually work is disclosed. But regardless of even all of that, it's just arbitrary for the board to resolve the dispute as to whether it's a get request. But then fail to go on and do the analysis of why that's important. Further argument is blockable. Thank you. We'll take the case under advisement.